[No. 49838–5. En Banc. January 5, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK W. MARINO, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Seth Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for respondent.

DIMMICK, J.—Appellant was convicted of second degree assault in a jury trial which followed termination of his pretrial diversion agreement. His appeal of the conviction raises two issues. The first concerns the due process requirements necessary for the termination of a pretrial diversion agreement. Specifically, when the trial court approves termination of a diversion arrangement after an evidentiary hearing which establishes violation of the agreement and a reasonable basis for the prosecutor's decision to terminate, is the accused denied due process when the trial court does not make an independent finding that the violation of the agreement warranted termination? We find no denial of due process under these circumstances. Appellant also asserts that the State failed, at trial on the underlying charge, to prove venue. We find this contention without merit. Accordingly, the conviction below is affirmed.

In December 1979, appellant was charged with second degree assault of his fiancee's 4–year–old daughter which arose from an incident wherein the child had been hospitalized for treatment. Her attending physician reported the suspected case of child abuse to the Snohomish County authorities. Soon thereafter, appellant and the child's mother voluntarily sought parenting skills counseling. Since appellant was in a counseling program, the county prosecutor recommended a diversion arrangement. The pretrial diversion agreement entered into on August 8, 1980, required appellant to waive certain constitutional rights, including the right to a speedy trial. It contained his state-

ment admitting the assault. Under the terms of the agreement, prosecution was to be stayed for 3 years if appellant successfully completed several therapy programs and otherwise complied with the terms of the agreement. On June 22, 1981, the prosecutor notified appellant that because of noncompliance with the agreement, prosecution was being recommenced.

A complete evidentiary hearing on appellant's motion to set aside the diversion termination was held, with witnesses including appellant, fully examined. Appellant's motion was denied, the trial court finding from the evidence that there were reasonable grounds for the prosecutor's action. The record, however, contains no formal factual findings or statement of the evidentiary grounds for the decision.

A jury trial was subsequently held and appellant was found guilty of the assault charge. The appeal to the Court of Appeals, Division One, was certified to this court.

I

Appellant's due process contention necessitates inquiry into the proper role of the court in terminating pretrial diversion arrangements between prosecutors and defendants entered into after formal charges have been instituted against an accused. It requires reconciliation of a conflict between prosecutorial discretion and judicial control of the criminal justice system.

Prosecutorial discretion in the charging process has historically provided a basis for informal diversion from the criminal justice system. *See generally* National College of District Attorneys, *Discretionary Authority of the Prosecutor* 48–60 (J. Douglass ed. 1977). Diversion that results from a prosecutor's discretion to refuse to file charges seems relatively immune from judicial review. A. Goldstein, *The Passive Judiciary: Prosecutorial Discretion and the Guilty Plea* 9–24 (1981); F. Miller, *Prosecution: The Decision To Charge a Suspect With a Crime* 154–72 (1970). Recently, however, post–charging discretion to dismiss charges or suspend prosecution to allow alternative rehabil-

itation has been receiving closer scrutiny by the courts. *See, e.g., State v. Leonardis,* 73 N.J. 360, 375 A.2d 607 (1977); Gifford, *Meaningful Reform of Plea Bargaining: The Control of Prosecutorial Discretion,* 1983 U. Ill. L. Rev. 37. Increasingly, state legislatures are imposing statutory requirements for pretrial diversion programs. Comment, *An Analysis of State Pretrial Diversion Statutes,* 15 Colum. J.L. & Soc. Probs. 1 (1979).

Washington is among those states which have enacted statutes dealing with pretrial diversion or deferred prosecution programs. *See* RCW 9.95A; RCW 10.05. RCW 9.95A.030(4) defines deferred prosecution as

a special supervision program, for an individual, ordered for a specified period of time by the court prior to a guilty plea to, or a trial on, a felony charge, pursuant to either:
    (a) A written agreement of the prosecuting attorney, defendant, and defense counsel, with concurrence by the court . . .
    . . .
    . . . if the defendant does not meet any of the conditions of the program at any time prior to completion of the specified period, the court may enter an order rescinding the deferred prosecution program and authorizing the prosecution to proceed.

Appellant contends that this statute vests discretion to terminate diversion agreements in the judiciary. He cites our recent decision in *State ex rel. Schillberg v. Cascade Dist. Court,* 94 Wn.2d 772, 621 P.2d 115 (1980) as supporting his view. There we found that the Legislature intended deferred prosecution programs to be sentencing alternatives to the traditional criminal justice system. Although *Schillberg* involved interpretation of RCW 10.05, it embraced the theory that deferred prosecution entails more than the charging function and does not fall solely within prosecutorial discretion. Thus, appellant argues, the termination decision is wholly an act of judicial discretion.

In opposing appellant's contention, the State urges us to find that the statute has no application because the agree-

ment at issue was apparently not entered into pursuant to statute.[1] The arguments the parties advanced before us, however, are not dependent on interpretation of either the statute or the instant diversion agreement.

## A

The parties proceeded on the assumption that due process requires a hearing before a diversion agreement can be terminated. In fact, a hearing was held in this case with full opportunity for presentation of witnesses and cross examination. The State does not challenge the need for this hearing or the power of the trial court to review the termination. Instead, the dispute concerns the appropriate role of the trial court at the hearing. Appellant urges us to find that because important liberty interests are at stake under such agreements, only an exercise of judicial discretion may terminate an accused's rights under the agreement. The State counters that due process· is satisfied if the court merely reviews the prosecutor's discretionary decision for reasonableness.

Appellant relies primarily on *State v. Lawrence,* 28 Wn. App. 435, 624 P.2d 201 (1981), a probation revocation case. He asserts that the function of the trial court is to determine (1) whether the diversion agreement has been violated and (2) whether such violation warrants termination of the program and commencement of prosecution.

*Lawrence* holds that in probation revocation, a defendant must have the opportunity to be heard by, and present evidence to, a neutral fact finder. The court, as fact finder,

---

[1]The agreement signed by the parties originally referred to RCW 9.95A, but the reference was stricken prior to signing. The State assumes that the prosecutor has inherent authority to enter into post–charging diversion agreements without specific statutory authority and therefore argues that the terms of the agreement control. The clause the State relies on provides: "[T]he State reserves the right if it believes that the defendant has violated the terms of this agreement to revoke the agreement and proceed to trial, if the Court so agrees . . ." The State's theory is that this clause vests sole discretion over termination in the prosecutor, subject only to judicial review for reasonableness. We do not address this contention directly because our holding necessarily disposes of the argument.

must determine whether the terms of probation have been violated. *Lawrence,* at 438. The rationale for this requirement is that deprivation of defendant's liberty cannot comport with due process unless based on verified facts. *Morrissey v. Brewer,* 408 U.S. 471, 484, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973) applies *Morrissey* to probation revocation. Together, these cases require the fact finder to make a statement of the evidence relied on and reasons for revoking probation. *Lawrence,* at 438. The statement facilitates appellate review and assures that the exercise of discretion involved in probation revocation is based on accurate knowledge.

Furthermore, in the case of probation revocation, the court must also determine the ultimate disposition, as part of its sentencing responsibility over probationers. The dispositional phase includes deciding whether the facts warrant revocation and reimposition of sentence. *Lawrence,* at 438.

Two factors distinguish probation revocation from pretrial diversion termination. First, the court has direct supervisory powers over a convicted person's probation, including its conditions and length. It follows, therefore, that the court must have primary control over reimposition of sentence. *See United States v. Hicks,* 693 F.2d 32, 34–35 (5th Cir. 1982), *cert. denied,* 103 S. Ct. 1226 (1983). But under a diversion arrangement, the prosecutor establishes the conditions and supervises the program. The court's role is less direct, consisting primarily of assuring procedural regularity throughout the criminal justice process. Second, the consequences of probation revocation are more serious to a defendant than termination of deferred prosecution to an accused. Following diversion termination, the accused still has the opportunity to clear him or herself of the charges at trial.

Appellant also relies on cases involving plea bargain agreements, in which the trial court determines, as a question of fact, whether the accused has violated the terms of

the bargain. *In re James,* 96 Wn.2d 847, 640 P.2d 18 (1982). In such cases, the burden is on the State to prove noncompliance with the agreement by a preponderance of the evidence. These cases conclude that because important constitutional rights have been waived, the accused is entitled to judicial enforcement of the terms of the agreement. *United States v. Hicks, supra; In re James, supra.*

■ The similar rights at stake in probation revocation, plea bargain agreements, and pretrial diversions persuade us that appellant is entitled to have factual disputes resolved by a neutral fact finder. This includes an independent determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State. *Accord, United States v. Hicks, supra; see State v. Barnes,* 37 Conn. Supp. 853, 439 A.2d 456 (1981). This requirement best safeguards the appellant's right to have the agreement administered equitably, with full protection of the constitutional rights relinquished in the bargain. The State is not unduly burdened as it has no interest in proceeding to prosecution in any case unless a violation has, in fact, occurred.

Once the court has resolved the factual disputes, determining whether a violation of the agreement has occurred, it has a basis for reviewing the reasonableness of the prosecutor's decision to terminate. Clearly, the court is not in a position to require that prosecution be recommenced. Discretion to finally bring the case to trial still rests with the prosecutor. Other options may still be open in a particular case, such as reducing the charges if a plea bargain is reached, offering a new diversion arrangement, or dismissing charges where appropriate. We therefore find that the court's review of a prosecutor's termination decision should consist of assessing its reasonableness in light of the facts the trial court determines at hearing. *State v. Wilson,* 183 N.J. Super. 86, 443 A.2d 252 (1981); *cf. State ex rel. Harmon v. Blanding,* 292 Or. 752, 644 P.2d 1082 (1982). *See generally* Note, *Pretrial Diversion From the Criminal Process,* 83 Yale L.J. 827 (1974).

A review for reasonableness requires the trial court to ascertain that facts exist that support a prosecutor's termination decision. Reviewing for a factual basis gives deference to a historically prosecutorial function without depriving an accused of independent judicial review of the evidence. But as we have noted, practical considerations limit the court's role. The court does not ordinarily determine what further action the prosecutor will take in prosecuting the case. We recognize that following probation violation, it is the court which decides the probationer's disposition. We find, however, that critical distinctions between probation revocation and diversion termination require a somewhat different role for the court in these two situations.

### B

In the present case, the trial court assumed that the purpose of the hearing was to determine whether the agreement had been violated. The court then attempted to make a distinction between deciding the fact of a violation and deciding whether termination was warranted. The court stated that its "determination really is not one to weigh the facts and determine if . . . there is sufficient basis to reject [from the diversion program]." The court then held that "it's clear from the evidence before the Court that there were sufficient grounds, reasonable grounds for the prosecutor to have taken the [termination] action . . ." The court made no factual findings or a statement of the evidentiary grounds upon which it relied.

Although the trial court's statement appears ambiguous, we are confident, from our own review of the record that the trial court had ample basis to find violation of the agreement by a preponderance of the evidence. The evidence consisted principally of the diversion counselor's testimony that appellant had repeatedly failed to keep counseling appointments, had failed to make arrangements to resume regular counseling, and was finally terminated by the therapist without completing the therapy program. Appellant did not dispute this testimony, but offered an

explanation for missing appointments and generally neglecting therapy. In view of the essentially uncontroverted evidence, we find it unnecessary in this case to remand for a statement of findings. *Chmela v. Department of Motor Vehicles*, 88 Wn.2d 385, 561 P.2d 1085 (1977); *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 507 P.2d 1165 (1973). The trial court clearly did find the prosecutor's decision to terminate reasonable in light of the facts ascertainable from the evidence. This finding satisfies the standard of review we hold appropriate for pretrial diversion terminations.

We emphasize, however, that the trial court needs to clearly state the evidence upon which the court relied. The statement may be made orally or in writing. The accused will be afforded full protection of his bargain only if factual disputes are resolved and review of the prosecutor's discretion is based on the evidence.

Because the procedure followed by the trial court substantially satisfies the criteria we adopt for termination of pretrial diversion agreements, we find that appellant has not been denied due process.

## II

Appellant asserts that the trial court erred in denying a motion to dismiss the charge and a motion in arrest of judgment because the State failed to prove venue.

The only evidence admitted at trial on the issue of venue was the address at the time of assault of the 4–year–old victim (a Snohomish County address), the testimony of the attending physician that he reported the suspected case of child abuse to Snohomish County authorities, and appellant's statement admitting that he pushed the child against a coffee table.

Jurisdictions are split on amount of proof required to establish venue. Annot., 67 A.L.R.3d 988 (1975). Washington appears to have adopted the position that although venue must be proved as an "element" of the charge, proof beyond a reasonable doubt is not necessary. *See State v.*

*Stafford,* 44 Wn.2d 353, 267 P.2d 699 (1954); *accord, State v. Smith,* 65 Wn.2d 372, 397 P.2d 416 (1964). The official comments to the Washington Pattern Jury Instructions, cited in *State v. Brown,* 29 Wn. App. 11, 627 P.2d 132 (1981), provide:

> The venue must be proved by the plaintiff but it need not be proved beyond a reasonable doubt; it is sufficient if venue can be reasonably inferred from the facts and circumstances . . .

Comment, WPIC 4.21. Additionally, direct testimony that the offense was committed in a particular jurisdiction is not required; inferences from circumstantial evidence may establish proper venue. *State v. Brown, supra; State v. Escue,* 6 Wn. App. 607, 495 P.2d 351 (1972). The appropriate test is whether a jury could reasonably conclude from the evidence that the offense took place in the charging jurisdiction. *State v. Stafford, supra; State v. Brown, supra.*

The trial court held that the jury rationally found proper venue from the evidence. We find no error.

Conviction affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.