IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                          Respondent,<br><br>       v.<br><br>CAITLIN JEAN CRAIG,<br><br>                         Appellant. | No. 79766-2-1<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — The State charged Caitlin Craig with two counts of possession of a controlled substance and two counts of bail jumping. Craig pleaded not guilty to all counts and entered into an Adult Drug Treatment Court (ADTC) agreement, which stipulated that the trial court would dismiss all charges should she successfully complete the ADTC program. After Craig failed to appear for an ADTC hearing, the State recommended terminating her from the program. The trial court followed the recommendation and then convicted Craig of the four crimes. Craig appeals, raising issues for the first time on appeal. We affirm.

## I. BACKGROUND

The State charged Craig with possession of heroin in Snohomish County. Craig failed to appear for a motion hearing and the trial court issued a bench warrant for her arrest. The State charged Craig with bail jumping. The State later charged Craig with possession of methamphetamine in Skagit County, and another count of bail jumping following her failure to appear at an omnibus

Citations and pin cites are based on the Westlaw online version of the cited material.

hearing for that charge. Police arrested Craig on the outstanding Snohomish County warrant.

The Snohomish County Prosecutor's Office brought the Skagit County charges to Snohomish County; Craig agreed not to challenge venue. The State moved to transfer Craig to drug court. Craig agreed to participate in the ADTC program, which, upon successful completion, would lead to the dismissal of all four charges. As part of the ADTC agreement, Craig waived her constitutional rights to a speedy trial and a trial by jury for the charges. The agreement also required that Craig appear for all drug court hearings and stated that failure to do so would warrant termination from the program. Under the agreement, if Craig disagreed with any decision to terminate her from the program, she could request a full adversarial hearing to contest the decision:

> I understand the Team may, at any time during the program, decide to terminate me from ADTC Court for non-compliance or my violation of any of these agreements. The termination decision will be ultimately made by the Judge, taking into consideration the entire team's recommendations.

> If I disagree with that decision, I may request a full adversarial hearing which would be scheduled before a different judge at which time the prosecutor would be required to prove the program violations or circumstances that warrant termination by a preponderance of the evidence.

The agreement informed Craig that the State could prosecute her for the charges if she did not complete the program:

> The prosecutor reserves the right to prosecute the Defendant upon any termination from ADTC in accordance with the procedures in State v. Marino, 100 Wn.2d 719, 647 P.2d 171 (1984) and State v. Kessler, 75 Wn. App. 634, 879 P.2d 333 (1994).

> I understand that I will have the right to a hearing by a drug court judge who was not party to the decision to terminate me, as to

2

> whether I did the act which prompted the team to decide to terminate me, but whether termination is the appropriate sanction lies in the sole discretion of the team, and cannot be reviewed at the due process hearing.

The agreement also addressed the effects of termination on Craig's underlying charges and confirmed waiver of her rights:

> I understand . . . that if I am terminated from the ADTC Program, a Judge will read the affidavit of probable cause and/or police reports and other materials submitted by the prosecuting authority and, based solely upon that evidence, the Judge will decide if I am guilty or not guilty of the crime(s) charged herein.
>
> . . .
>
> I have read or have read to me and I understand this agreement.  I understand the rights I waive and do hereby knowingly waive these rights and enter into these agreements with the ADTC.  I have no further questions to ask.

Craig signed the ADTC agreement in the presence of her counsel, who also signed.

After Craig failed to appear for an ADTC hearing, the trial court issued a warrant and the police arrested her.  Craig appeared at the next hearing and the State moved to terminate her participation in the program due to her violating the agreement's requirement that she attend all drug court hearings.  During the proceeding, Craig did not request a hearing to challenge the State's recommendation to terminate her.  She did not oppose the State's motion.  Instead, Craig's counsel confirmed that Craig had reviewed and understood the reasons behind the State's request to terminate her from the program.  The trial court accepted the team's decision to terminate Craig, reasoning that she "was on long term bench warrant since March 2, 2018, and was arrested on new criminal law allegations."  It did not require that the State prove the violations by a

preponderance of the evidence. And it found Craig guilty of the underlying offenses of possession of a controlled substance and bail jumping.

At sentencing, Craig again did not request an evidentiary hearing or object in any way to the proceedings but instead stated that drug court "wasn't for [her] and [she] had planned on opting out of it when it was too late." Craig now asks the Court to reverse the order of termination and vacate her convictions.

## II. ANALYSIS

Craig argues (1) the trial court deprived her of due process when it terminated her from the ADTC program without holding an evidentiary hearing and (2) insufficient evidence supports the trial court's finding that Craig violated the terms of the ADTC agreement. Because Craig raises these issues for the first time on appeal, we decline to review them.

A. Due Process

Craig claims the ADTC agreement entitles her to an evidentiary hearing before termination. She also argues that the trial court violated her due process rights by failing to provide her with written notice of the alleged ADTC agreement violations, notice as to what documents the prosecution would present to establish the violations, and an opportunity to present evidence or confront adverse witnesses to contest the violations. Craig claims that the ADTC agreement guaranteed her these procedures when it stated the trial court would terminate Craig in accordance with Marino and Kessler. Because the trial court did not follow these procedures when terminating her from the ADTC program,

4

she claims the trial court violated her due process rights. Craig raises this issue for the first time on appeal.

We may refuse to review any claim of error that a party did not raise before the trial court. RAP 2.5(a). A limited exception exists, however, for manifest errors affecting a constitutional right. RAP 2.5(a)(3). An error is manifest only if it has "practical and identifiable consequences apparent on the record that should have been reasonably obvious to the trial court." State v. O'Hara, 167 Wn.2d 91, 108, 217 P.3d 756 (2009) (citing State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). It is not the role of an appellate court on direct appeal to address claims where trial counsel could have been justified in their actions or failure to object. Id. at 100.

Craig's claim raises a constitutional error. Craig argues that the trial court violated her due process rights when it did not provide her an evidentiary hearing and procedures outlined in Marino and Kessler.

But Craig's claim of constitutional error is not manifest. RAP 2.5(a)(3). Craig signed the ADTC agreement in the presence of her counsel, confirming her understanding of her right to an evidentiary hearing. But during the termination proceeding, Craig did not request an evidentiary hearing. Craig also did not contest the State's violation allegations but instead acknowledged them and took responsibility for her missed court appearance. Thus, the record indicates that Craig did not wish to pursue an evidentiary hearing. In addition to acknowledging the allegations, Craig did not claim to have—nor does she now claim to have—evidence to refute the State's violation allegations. Lastly, Craig's counsel may

5

have been justified in opting not to object to a lack of hearing because Craig was unlikely to surmount the State's allegations and they wanted to move forward with the case. See O'Hara, 167 Wn.2d at 100. Because Craig's claim of constitutional error is not manifest, we decline to review it for the first time on appeal.

B.  Sufficient Evidence

Craig argues that the trial court terminated her from the ADTC program without sufficient evidence. Craig argues that the trial court erred when it did not require the State to prove its violation allegations by a preponderance of the evidence. Craig raises this issue for the first time on appeal.

The State's burden to prove Craig's violations by a preponderance of the evidence inheres in an evidentiary hearing concerning termination from a diversion program. See Marino, 100 Wn.2d at 725 ("[A]ppellant is entitled to have factual disputes resolved by a neutral fact finder. This includes an independent determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State.").

As discussed above, Craig's claim of error regarding a hearing does not involve a manifest error. Because the issues of hearing and preponderance of the evidence are interrelated—i.e., the State bears no burden of proof without an evidentiary hearing—her sufficiency of the evidence claim is likewise not manifest. There are no practical or identifiable consequences for failing to hold the State to a preponderance of the evidence burden when an evidentiary

hearing did not occur.[1]  Thus, we decline to review Craig's claim of error

regarding sufficiency of the evidence for the first time on appeal.[2]

We affirm.

_____Chun, J._____

WE CONCUR:

_____Andrus, A.C.J._____        _____Appelwick, J._____

---

[1] And except to the extent this claim of error interrelates with the due process issue above, it does not concern a constitutional right.  See RAP 2.5(a)(3).

[2] Given our conclusion, we need not reach the State's argument that we should remand for correction of findings of fact and conclusions of law if we find error in the trial court's ruling.

And we note that, at the time of termination, a copy of the bench warrant for Craig's failure to appear at the ADTC hearing was on file with the trial court.